IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CALVIN M. LUCAS                                                                             PLAINTIFF

V.                          Case No. 4:24-CV-00079-DPM-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                          DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On November 27, 2020, Plaintiff Calvin M. Lucas ("Lucas") filed a Title II application for disability and disability insurance benefits. (Tr. at 16). On the same day, he filed a Title XVI application for supplemental security income. *Id*. In the applications, he alleged disability beginning on June 21, 2020. *Id*. The applications were denied initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Lucas's

applications by written decision, dated March 29, 2023. (Tr. at 16–31). The Appeals Council denied Lucas's request for review of the ALJ's decision on November 27, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Lucas has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.     THE COMMISSIONER'S DECISION

Lucas was 38 years old on the alleged onset date of disability, and he has a limited education. (Tr. at 29). He meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. at 19). The ALJ found that Lucas has not engaged in substantial gainful activity since June 21, 2020, the alleged onset date.[1] *Id*.

At Step Two, the ALJ determined that Lucas has the following severe impairments: "Chronic Kidney Disease; Hypertension; History of Intracranial Injury; and Trauma-and Stressor-Related Disorder with History of Depressed Mood." *Id*. The ALJ also noted that Lucas complained of, and had previously been diagnosed with, sleep apnea. *Id.* However, the ALJ determined that it was not a severe impairment, as Lucas had not obtained a CPAP machine, despite being told he should nearly a year earlier. *Id.* In addition, Lucas's symptoms resolved with CPAP therapy during a titration study performed in August 2022.

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

*Id*. The ALJ also discussed Lucas's complaints of migraine headaches and found such complaints unpersuasive given that Lucas's alleged headaches resolved when he took his blood pressure medication. (Tr. at 19–20). Moreover, Lucas made no efforts to receive ongoing treatment for his headaches after April 2021. *Id*. at 20.

At Step Three, the ALJ determined that Lucas's impairments did not meet or equal a Listing.[2] (Tr. at 20–21). In making this determination, the ALJ considered Lucas's impairments both alone and in combination. *Id.* at 21. The ALJ then determined that Lucas has the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with the following exceptions: (1) Lucas is restricted from working at "unprotected heights;" (2) Lucas would require use of a cane in one of the upper extremities in the "course of ambulation"; and (3) Lucas is able to perform "simple, routine, repetitive tasks, and make simple work-related decisions." *Id.*

At Step Four, the ALJ found that Lucas is unable to perform any of his past relevant work. (Tr. at 29). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found, based on Lucas's age, education, work experience, and RFC, that there are jobs in the national economy that Lucas can perform. (Tr. at 29–31). Therefore, the ALJ concluded that Lucas was not disabled from the alleged onset date through the date of the decision. *Id.*

---

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

### III.    DISCUSSION

####    A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

####    B.    Lucas's Arguments on Appeal

Lucas contends that the evidence supporting the ALJ's decision is less than

4

substantial. Specifically, Lucas argues that: (1) the ALJ did not properly evaluate his subjective complaints, (Doc. 13 at 9–12); (2) the ALJ did not give proper deference to his medical records, *id.* at 13–14; (3) the ALJ failed to establish a proper RFC, *id.* at 14–17; and (4) the ALJ did not prove there are substantial jobs available in the national economy that he can perform, *id.* at 17–19. The Court will address each of Lucas's arguments, in turn.

### 1. The ALJ properly considered and evaluated Lucas's subjective complaints.

Lucas asserts that pain and other symptoms kept him from being able to work. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted). Lucas argues that the ALJ did not consider all of his subjective complaints nor did he address their impact under this analysis. (Doc. 13 at 11). The Court finds this argument unpersuasive.

In evaluating Lucas's subjective complaints of pain, first, the ALJ considered Lucas's ability to perform daily activities, like preparing simple meals; performing household chores, such as washing dishes and doing laundry; going to the park; shopping

in stores; socializing with others; driving; and watching TV.[3] (Tr. at 21, 298–303). The Court notes that, in his January 21, 2021 Function Report, Lucas stated that he tries to go for a walk daily; he handles a bank account, a checkbook, and can count change; and his illness does not impact his ability to reach, walk, sit, talk, hear, climb stairs, see, complete tasks, follow instructions, use his hands, or get along with others. (Tr. at 298–302).

The ALJ also discussed the nature and extent of Lucas's pain and his course of treatment, including that Lucas's blood pressure improved when he took his medication.[4] (Tr. at 23–25). The ALJ discussed that, despite his impairments, and despite being repeatedly advised by his treatment providers to quit, records showed that Lucas continued to smoke cigarettes and use marijuana throughout the past few years. (Tr. at 24, 26, 386, 392, 493, 504, 523, 568, 570–571, 677, 679, 695, 697). Further, the ALJ noted significant gaps in treatment;[5] specifically, Lucas's lack of regular mental health treatment. (Tr. at 23, 25–26). Moreover, the ALJ observed that Lucas was frequently non-complaint with treatment, including leaving the hospital against medical advice on at least one occasion.

---

[3] Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding that daily tasks such as cooking, cleaning, visiting friends and relatives, and attending church undermined the party's claims of disability); *see, e.g., Milam v. Colvin*, 794 F.3d 978, 982 (8th Cir. 2015) (cooking, cleaning, showering, shopping); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (driving, shopping, bathing, and cooking); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012), 680 F.3d at 1067 (vacations, daily chores, providing self-care); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (some housework, cooking, and shopping).

[4] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[5] The record was held open for a period of time following the hearing so that Lucas's counsel could provide the ALJ with the medical records to "fill" the gaps in Lucas's treatment notes—specifically the gap between November 2021 and June 2022. (Tr. 74). Lucas provided additional documentation regarding medical care from July and August of 2022 and Lucas's prescription history. (Tr. at 565–698).

(Tr. at 23). Similarly, the ALJ noted that, although Lucas's primary care physician referred him to a nephrologist for his chronic kidney disease, he did not follow up.[6] (Tr. at 26, 626).

Notwithstanding, the ALJ recognized Lucas's history of stroke, chronic kidney disease, and hypertension as severe impairments and limited Lucas to sedentary work with additional restrictions to account for Lucas's subjective complaints, as supported by the medical records. In sum, the ALJ properly considered the factors associated with evaluating Lucas's subjective complaints and found some of those complaints were not entirely consistent with the evidence in the record. (Tr. at 22).

### 2. The ALJ Properly Considered Lucas's Medical Records in Determining his RFC.

Lucas claims that the ALJ failed to give proper deference to his medical records. (Doc. 13 at 13–14). Specifically, Lucas claims that his medical records support his subjective complaints. Moreover, Lucas argues that his medical records confirm the following: (1) his "CVA [stroke] and his CKD [chronic kidney disease] diagnoses," (2) potential cognition issues stemming from his stroke, (3) potential issues that may arise due to his CKD, and (4) his diagnosis of high blood pressure. (Doc. 13 at 12–14).

Contrary to Lucas's arguments, however, the ALJ recognized Lucas had previously suffered from a stroke and had been diagnosed with CKD. (Tr. 19) ("The claimant had the following severe impairments: Chronic Kidney Disease . . . History of Intercranial Injury."). Similarly, the ALJ found that Lucas had hypertension and that Lucas's

---

[6] A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

hypertension was a severe impairment. *Id.* The ALJ relied on Lucas's medical records in determining that Lucas's migraines resolved when he treated his hypertension, (Tr. 19); that his mental impairment was not sufficient to meet a Listing, *id.* at 20; that Lucas was found to be "alert, orientated, and engaged" with a "normal mood and affect, a normal appearance, normal behavior, normal thought content[,] and normal judgment" during various treatment visits, *id.* at 20–21; and that Lucas responded well to treatment, *id.* at 24–27. The ALJ further noted, based on the medical records, that Lucas left the hospital against medical advice on at least one prior occasion and failed to seek *any* ongoing treatment for his impairments from November 2021 through June 2022. (Tr. at 23).

Lucas further alleges that, had proper deference been given to his medical records, (1) "there would have been issues with all exertional work-bases"; (2) he would be ineligible for most sedentary positions; (3) he would be ineligible for any position that did not allow for unscheduled and at-will breaks; and (4) due to his mental health, stroke activity, and kidney dysfunction, he would be off-pace and/or off-task for more than fifteen percent of the workday. (Doc. 13 at 13). As discussed more thoroughly in § (III)(B)(3) *infra*, however, the ALJ found that Lucas was unable to perform work at *any* exertional level and limited Lucas to sedentary work only. Additionally, the ALJ included further restrictions in the RFC to account for Lucas's subjective complaints and information contained in the medical records. *See* (Tr. 21) ("The claimant would be restricted from work at unprotected heights; In the course of ambulation, the claimant would require the use of a cane in one of the upper extremities; The claimant is able to perform simple, routine, repetitive tasks, and make simple work-related decisions."). Notably, the medical

8

records do not support Lucas's assertion that he requires additional breaks for CKD and his *potential* cognitive issues; however, the ALJ did acknowledge that Lucas previously complained of difficulty urinating and that Lucas received mental health treatment for two months. *Id.* at 23, 26.

Lucas contends that, had the ALJ given proper credence to his medical records, the ALJ would have noted Lucas's "possible cognitive issues" or the *potential* for Lucas to have future cardiovascular incidents, such as another stroke. (Doc. 13 at 12). Further, Lucas alleges that his medical records should have put the ALJ on notice that Lucas *may* have stressors that *may* increase his blood pressure, which *could* lead to additional problems. *Id.* Likewise, Lucas argues the ALJ should have found that Lucas required additional bathroom breaks because his CKD *may* become overstressed, and Lucas *may* lose additional functionality if he waits for an appropriate break period. *Id.* at 13.

In sum, Lucas argues that the ALJ should have drawn all possible inferences from the medical records to favor Lucas. However, such a reading is precisely what an ALJ cannot do. *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) ("[A]n administrative judge may not draw upon his own inferences from medical reports."); *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020) ("However, the ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own."); *see also Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975)). Accordingly, the Court finds the ALJ properly considered all of Lucas's medical records in determining Lucas's

RFC.[7]

### 3. RFC

Lucas claims that the RFC did not fully incorporate his limitations.[8] (Doc. 13 at 14). This claim is unfounded. The ALJ considered that Lucas had a stroke and subsequently demonstrated an unsteady gait caused by ongoing left-sided weakness, and his doctor prescribed a cane for ambulation. (Tr. at 25–26). The ALJ factored this into the RFC, and he limited Lucas to only sedentary work, the most restrictive exertional category. (Tr. at 21). This was a more restrictive RFC than that assessed by the state-agency medical experts—Dr. David Gillum and Dr. Henry Scott, who opined that Lucas could perform work at the light exertional level. (Tr. at 115, 160). The ALJ found the opinions of Dr. Gillum and Dr. Scott unpersuasive, as their assessments "seem inconsistent with the claimant's testimony and limited supporting medical evidence . . . which tends to suggest that his impairments are somewhat more limiting." (Tr. 28). Specifically, the ALJ noted that Lucas has complained of left-sided weakness and had clear difficulties standing. *Id.* Likewise, the ALJ found Dr. Tawnya Brode, Psy.D.'s assessment unpersuasive because she found that Lucas's mental impairments caused no limitation and were not severe. *Id.*

---

[7] It is unclear whether the Plaintiff is arguing that, had the ALJ given "proper deference" to his medical records: (1) the RFC would have been different; (2) the ALJ would have found Lucas unable to work; or (3) the VE would have found there were no jobs that Lucas could perform in the national economy. Regardless, the Court finds that the ALJ properly evaluated the medical evidence in determining Lucas's RFC.

[8] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Based on the limitations in the RFC, the Court finds the ALJ credited Lucas's symptoms and impairments but found them not to be as severe, persistent, or limiting as Lucas alleged. For example, the ALJ noted some extremity weakness, especially on Lucas's left side, but, at times, the medical records showed normal range of motion in the extremities, normal gait, and normal coordination. (Tr. at 24–25, 460). Also, Lucas improved over the course of his physical therapy treatment.[9] (Tr. at 24, 486–494). Moreover, Lucas noted in his application for disability benefits that he liked to go for daily walks and that his ability to reach, walk,[10] sit, hear, use his hands, and climb stairs was unaffected by his conditions. (Tr. at 300–302). Accordingly, the physical RFC for sedentary work allowing for the use of a cane incorporated all of Lucas's physical limitations.

Similarly, the mental restrictions in the RFC properly limited Lucas to simple work. (Tr. at 21). Lucas complained of depression due to life stressors, but he only treated his depression with a psychotherapist in September and October of 2021. (Tr. at 20, 484–500). The therapist observed depressed mood, normal speech, good eye contact, linear thought process, and fair insight and judgment. (Tr. at 486–502). She noted positive coping skills, like exercise and deep breathing. (Tr. at 490). Lucas did not require inpatient psychiatric treatment, and he could perform daily activities. Lucas further stated that his ability to complete tasks, understand, follow instructions, and get along with others was unaffected

---

[9] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[10] Lucas noted that he could even complete long walks if he had his cane. (Tr. 303).

by his conditions. (Tr. 302). The ALJ noted that Lucas was able to perform many daily tasks that included prolonged focus, like "reading, driving, watching television, and listening to music." (Tr. at 20). Accordingly, the Court finds no error in the ALJ's assessment of Lucas's RFC.

### 4. Based on Lucas's RFC, there are jobs in the national economy that he can perform.

The ALJ posed a number of hypotheticals to the VE at Step Five, inquiring whether a person with Lucas's impairments could perform work in the national economy.[11] (Tr. at 100–103). The ALJ included only restrictions demonstrated by the evidence. Lucas now argues that more restrictions should have been included in the hypotheticals posed to the VE. Lucas, however, failed to ask any questions of the VE during the hearing. (Tr. at 103) ("ALJ: Okay. Counsel, do you have any questions for [VE]? Atty: I do not, Your Honor."). Moreover, Lucas did not object to any of the hypotheticals as they were presented during the hearing. *Id.* at 100–103.

Lucas further argues that he needed extra restroom breaks and would miss significant amounts of work *if* he had to go to the hospital, which should have been included in the hypotheticals posed to the VE. (Doc. 13 at 17–19). The medical evidence does not support this argument, however. Other than some allegations of frequent urination—which Lucas merely states *may* happen if his condition is exasperated—there is no medical evidence in the record supporting the alleged need for extra restroom breaks. (Doc. 13 at

---

[11] VE testimony constitutes substantial evidence when, as here, it is in response to a hypothetical that captures all the concrete consequences of a claimant's impairments. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

18). Additionally, there is no evidence in the record showing that Lucas would need to spend time at the hospital. In fact, the ALJ noted that Lucas repeatedly refused or failed to get recommended treatment. For example, in October of 2020, Lucas went to the hospital, where he was found to have potentially "acute kidney injury." (Tr. 23). When the hospital sought to admit him, he elected to leave against medical advice. *Id.* Likewise, the ALJ noted that Lucas did not follow up with the recommendation to see at nephrologist. (Tr. at 24) ("However, the claimant's treatment records document no follow-up by him on the aforementioned referral to see a nephrologist given to him by his primary care provider last year"). Lucas merely speculates that he may need to go to the hospital at some time in the future; Lucas further speculates that, without extra breaks throughout the day, working would "likely cause further damage." (Doc. 13 at 14). Lucas does not provide any evidence to support his suppositions.

In short, the hypotheticals posed to the VE by the ALJ accurately reflected Lucas's RFC; there was no error in the ALJ's conclusion at Step Five that Lucas can perform work that exists in the national economy, given his RFC, age, education, and work experience.

## IV.   CONCLUSION

There is substantial evidence on the record as a whole supporting the Commissioner's decision that Lucas was not disabled. The ALJ properly evaluated Lucas's subjective complaints and medical records, and the RFC and Step Five hypotheticals to the VE incorporated all of Lucas's credible limitations.

IT IS THEREFORE RECOMMENDED:

1. That the Commissioner's decision be AFFIRMED.

2. That Judgment be entered for the Defendant.

DATED this 23rd day of December, 2024.

_____
UNITED STATES MAGISTRATE JUDGE